IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RACHEL GILLAN a/ka/ RACHEL SZABO, <br><br> Plaintiff, <br><br> JAMES O'CONNOR, Individually and in his official capacity as SHERIFF OF WHITE COUNTY, TENNESSEE; and JERRY RAY COLE, JR., individually and in his capacity as an employee of the White County Sheriff's Department, <br><br> Defendants. | NO. 2:06-0038 <br> JUDGE HAYNES |

**MEMORANDUM**

Plaintiff, Rachel Gillan, also known as Rachel Szabo, filed this action under 42 U.S.C. § 1983, against the Defendants: James O'Connor, individually and in his official capacity as Sheriff of White County, Tennessee and Jerry Ray Cole, Jr., individually and in his capacity as an employee of the White County Sheriff's Department. Plaintiff's claims arise from a sexual assault upon her by the Defendant Cole while Plaintiff was with Cole on official business that was unrelated to the Plaintiff's original request to file a complaint with the Sheriff's office. For her claims against the Defendant O'Connor, Plaintiff alleges that the Defendant O'Connor was aware of Cole's prior questionable conduct involving a female and that O'Connor and White County failure to screen their employees adequately.

Before the Court is the Defendant O'Connor's motion for summary judgment (Docket Entry No. 19), contending, in sum, as to his conduct or omissions in his official capacity that is legally a claim against White County, and that Plaintiff's proof cannot meet the deliberate indifference standard required under Section 1983 for Plaintiff's claims against local

governmental entities.

Plaintiff responds that the facts here demonstrate a special relationship created by the Defendants White County and O'Connor that placed Plaintiff in a position that resulted in Cole's sexual assault of her.

## A. Review of the Record[1]

Plaintiff, an employee of Community Options, called the White County Sheriff's Department for assistance after an assault. Two (2) officers, including the Defendant Cole responded to the call and conducted a preliminary investigation. The Defendant Cole told the Plaintiff that she had to go with him to the Justice Center to complete a report and secure a warrant writer. Plaintiff agreed to go with Defendant Cole to the Justice Center where Plaintiff was taken to a small waiting room and remained there until Defendant Cole returned to work on his report.

While working on that report, Defendant Cole received a telephone call to drive his 4-wheel drive Tahoe to go to a wreck scene to assist in a search of the immediate area where the wrecked vehicle's driver had fled. Defendant Cole suggested to Plaintiff that she should accompany him or she would be left alone at the Justice Center until he returned. Plaintiff agreed to go with Cole who then asked the shift supervisor, if the Plaintiff could ride with him and the

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that there are material factual disputes, thus, this section does not constitute a finding of facts under Fed.R.Civ.P. 56(d).

2

supervisor gave his permission. Cole insisted that the Plaintiff ride up front with him, and Roger Allen Griffin, a reserve deputy sat in the back seat of Cole's vehicle.

At the accident scene, Cole decided to investigate an old mill area and told Plaintiff he was going to "check things out there." In route, Cole talked to Plaintiff about personal matters and also showed her marijuana. Plaintiff notes that at that time, the White County Sheriff's office lacked any records of any seizures of marijuana. Upon arrival to the area, Cole circled the old mill and then stopped to search a building on the mill's premises. Cole then told Plaintiff to accompany him into the building. The other deputy Sheriff remained in Cole's vehicle. Plaintiff went into the building with Cole where Cole sexually assaulted the Plaintiff. Some time later, another deputy arrived and blew a horn. Cole and the Plaintiff exited the barn, returned to the vehicle, and drove back to the Justice Center.

At the Justice Center, Cole completed the report for the Plaintiff's original complaint, but suggested that the Plaintiff reveal her body parts to him. Cole also gave his card with his personal telephone number. After the Plaintiff left the Justice Center, Cole called the Plaintiff at least three (3) times that day. Cole was later indicted for the incident and pled nolo contendere to official misconduct and was placed on probation.

In response to the Defendants' motion for summary judgment, Plaintiff submitted the affidavit of Betty Johnson who describes an earlier incident where Cole physically assaulted her and engaged in suggestive questioning about her daughter. (Docket Entry No. 23-6, Johnson Affidavit). Johnson states that she reported her concerns to O'Connor, but O'Connor did not deem her report worthy of inquiry. Id. at ¶ 3.

3

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

4

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he

5

respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must

'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby).

Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

6

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .' Bohn Aluminum & Brass Corp. v. Storm King Corp.,

303 F.2d 425, 427 (6th Cir. 1962) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on

7

summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court

8

> has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Plaintiff's theory is that the Defendant O'Connor and thereby White County created a "special relationship" with Plaintiff and created a legal duty to protect her when Cole's supervisor approved Plaintiff accompanying Cole whom the Defendant O'Connor was aware had been cited by a citizen as physically assaulting her. Plaintiff also contends that O'Connor's knowledge of that prior incident demonstrates his deliberate indifference to her safety.

In Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998), that a state actor may be held liable under the Fourteenth Amendment for private acts of violence under the state-created-danger theory.

> Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence. See Sargi, 70 F.3d at 913; see also D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc). As explained by the Seventh Circuit, '[i]f the state puts a man in a position of danger from private person and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor

9

as if it had thrown him into a snake pit." Bowers v. Devito, 686 F.2d 616, 618 (7th Cir. 1982). However, because many state activities have the potential to increase an individual's risk of harm, we require plaintiffs alleging a constitutional tort under § 1983 to show 'special danger' in absence of a special relationship between the state and either the victim or the private tortfeasor. The victim faces 'special danger' where the state's actions place the victim specifically as risk, as distinguished from a risk that affects the public at large. See Jones, 3 F.3d at 949, Janan v. Trammell, 785 F.2d 557, 560 (6th Cir. 1986); see also Mitchell v. Duval County Sch Bd., 107 F.3d 837, 839 (11th Cir. 1997), But see Reed v. Gardner, 896 F.2d 1122, 1125 (7th Cir. 1993) (finding that plaintiffs may state a claim under § 1983 where they allege state action that creates or contributes to the creation of a danger rendering citizens more vulnerable to harm). The state must have known or clearly should have known that its actions specifically endangered an individual. See Janan, 785 F.2d at 560 (finding no liability where plaintiff did not claim that the state actors should have known that their actions endangered the decedent); see also Cornelius v. Town of Highland Lake, 880 F.2d 348, 355-57 (11th Cir. 1989) (finding special danger where town knew plaintiff worked in the building where it placed work squad inmates, who later abducted and terrorized plaintiff).

Id. at 1066.

Applying these principles to the evidence in this action in a light most favorable to Plaintiff, as required on this type of motion, a reasonable trier of fact could find that Defendant's O'Connor's omission not to inform supervisory personnel to avoid permitting Cole in close situations with females was the principal cause that created the "special danger" in which Plaintiff was placed. The sheriff's supervisor's permission for Cole to take Plaintiff with him substantially increased the likelihood that she could be assaulted by Cole.

The total absence of precedent does not preclude the denial of qualified immunity for Plaintiff's claims against O'Connor in his individual capacity. In Anderson v. Creighton, 483 U.S. 635 (1987), the Court stated: "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say

10

that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law of unlawfulness must be apparent." Anderson, 483 U.S. at 640 (citations omitted). In Stemler v. City of Florence,, 126 F.3d 856 (6th Cir. 1997), the Sixth Circuit stated:

> While, as we will see below, there is a good deal of uncertainty with regard to the precise contours of substantive due process, it does not follow that state actors are insulated from liability on all such claims, no matter what the underlying facts may be. The fact that the law may have been unclear, or even hotly disputed, at the margins does not afford state actors immunity from suit where their actions violate the heartland of the constitutional guarantee, as that guarantee was understood at the time of the violation. Stated differently, it is simply irrelevant that the definition of the right to substantive due process has bee in flux if, under any definition found in the case law at the time, the defendants should have known [at the time] that their actions violated that right.

Id. at 867.

For the same reasons stated on Plaintiff's claim against O'Connor in his official capacity, the Court concludes that a reasonable trier of fact could find O'Connor liable in his individual capacity.

As to Defendants' reliance on Board of County Com'rs of Bryan County Okl. v. Brown, 520 U.S. 397 (1997), the standard for county liability was that:

> The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

\* \* \*

Respondent's claim, rather, is that a single facially lawful hiring decision can

11

launch a series of events that ultimately cause a violation of federal rights. <u>Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not liable solely for the action of its employee</u>.

520 U.S. at 405 (citations omitted) (some emphasis supplied).

The Court agrees that Plaintiff has failed to demonstrate that the Defendants' hiring of Cole was the cause of the assault, but the Defendant O'Connor's continued retention of him without inquiry after notice of a prior physical assault, could be found to constitute deliberate indifference sufficient to hold the Defendants O'Connor and White County liable for Plaintiff's injuries.

Accordingly, the defendants' motion for summary judgment should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 30th day of August, 2007

William J. Haynes, Jr.
United States District Judge

12